

1 of 4 DOCUMENTS

**JORGE CAMPOS, Plaintiff, vs. CITY OF CHICAGO, Chicago Police Detectives William Brogan, Star No. 20319 and Kevin Pietruszck, Star No. 21152, and Chicago Police Officers Craig Coughlin, Star No. 3818, S.J. Wierciak, Star No, 9306, Lt. Charlotte De La Torre, Star No. 356, and Assistant State's Attorney Emily Leuin, Defendants.**

**No. 08 C 2865**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2009 U.S. Dist. LEXIS 34214*

**April 20, 2009, Decided
April 20, 2009, Filed**

**COUNSEL:** [*1] For United States Of America, Plaintiff: Margaret M Keen, LEAD ATTORNEY, Teller, Levit & Silvertrust, Chicago, IL.

For Cylvia Grigsby, Defendant: Margaret M Keen, Teller, Levit & Silvertrust, Chicago, IL.

**JUDGES:** JAMES B. MORAN, Senior Judge, U.S. District Judge.

**OPINION BY:** JAMES B. MORAN

**OPINION**

MEMORANDUM OPINION AND ORDER

Plaintiff filed this claim under *42 U.S.C. § 1983* against five Chicago Police officers and Cook County State's Attorney Emily Leuin, alleging violations of the *fourth*, *fifth*, *sixth*, and *fourteenth amendments to the United States Constitution*, and a supplemental state law claim for malicious prosecution, in connection with his arrest and detention for a shooting. Before the court is defendant Leuin's motion to dismiss Count IV of the complaint, the only claim against her, which alleges violation of plaintiff's due process rights. For the following reasons, we grant defendant's motion.

Background

In considering defendant's motion to dismiss pursuant to *Fed.R.Civ.P. 12(b)(6)*, the court must accept the well-pleaded allegations of the complaint as true. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. We must construe all inferences in a light most favorable to the plaintiff. *Pisciotta v. Old Nat. Bancorp, 499 F.3d 629, 633 (7th Cir. 2007)*. [*2] We construct the following factual background from plaintiff's third amended complaint ("cplt.").

The Chicago Police arrested plaintiff on or about May 23, 2006 in connection with a shooting that took place on that day (cplt. PP 12, 19). As part of the investigation into the shooting, defendant and Chicago Police Detective William Brogan interviewed a possible witness, Ricky Pouncy (*id.* PP 20-21). Although Pouncy did not identify plaintiff as the shooter, defendant created a statement for Pouncy to sign that falsely inculpated plaintiff (*id.* PP 23-24). Defendant knew plaintiff was being held in police custody when she created the false statement, and did so in order to create probable cause to arrest and/or criminally charge him (*id.* PP 26-27). Plaintiff does not, however, allege that defendant was involved in any decision to charge or prosecute him (plf. response to def. mot. to dismiss at 1).

Defendant's actions took place "contemporaneous with and in conjunction with" the police department's initial investigation of the shooting, and before the Cook County State's Attorney's Office approved the filing of

criminal charges against plaintiff (cplt. PP 29-30). Plaintiff alleges that the [*3] Pouncy statement led to his being charged and incarcerated in the Cook County Jail (*id.* P 47). The criminal proceedings were terminated in September 2007, when plaintiff was found not guilty (*id.* P 65).

At all times defendant was acting as the employee, agent, or representative of the Cook County State's Attorney (*id.* P 9). Plaintiff alleges that, as a result of defendant's actions, plaintiff sustained mental and emotional harm. He alleges that defendant's acts violated plaintiff's right to due process under the *fourth*, *fifth*, *sixth*, and/or *fourteenth amendments*, and as a result, defendant is liable to plaintiff under *§ 1983* (*id.* P 49).

Discussion

Under *Fed.R.Civ.P. 8(a)*, the plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise the right to relief above a speculative level. *Twombly, 550 U.S. at 555*. A plaintiff must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)*, *quoting Lang v. TCF Nat'l Bank, 249 Fed. Appx. 464, 466-467 (7th Cir. 2007)*.

To state a claim for relief under *§ 1983*, the plaintiff [*4] must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law. *Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)*. When a government official defends against a *§ 1983* claim, she may be entitled to one of two types of immunities -- absolute and qualified -- which have long been recognized. *Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)*. Most public officials are entitled to qualified immunity, which shields them "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan, U.S. , 129 S.Ct. 808, 815, 172 L. Ed. 2d 565 (2009)*, *quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. Some officials, however, are entitled to absolute protection from damages liability because they perform "special functions" which fit within the common-law tradition of absolute immunity. *Buckley, 509 U.S. at 268-269*.

Defendant argues that she is entitled to absolute immunity because all of her actions in plaintiff's case [*5] were prosecutorial functions. Plaintiff contends that since the acts for which he is seeking to hold defendant liable did not involve the exercise of prosecutorial discretion or her functions as an advocate, defendant is not entitled to absolute immunity. We agree with plaintiff that defendant is not entitled to absolute immunity, but we find that her alleged fabrication of the Pouncy statement is protected by qualified immunity.

I. Absolute Immunity

Absolute immunity has traditionally been afforded to a prosecutor when she is "preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State." *Id. at 273*. Those acts include the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made. *Id.* On the other hand, when a prosecutor is not acting as "an officer of the court" -- i.e. when she is carrying out administrative or investigative functions that are unrelated to the initiation of a prosecution or judicial proceedings -- she is not entitled to absolute immunity. *Id.; see also Van de Kamp v. Goldstein, 555 U.S. , 129 S.Ct. 855, 861, 172 L. Ed. 2d 706 (2009)*, [*6] *citing Imbler v. Pachtman, 424 U.S. 409, 431 n. 33, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)*.

In determining whether absolute immunity protects the particular functions of a government official, the United States Supreme Court has embraced the "functional approach," which looks into the nature of the function performed, rather than the identity of the official. *Buckley, 509 U.S. at 269*. Thus when a prosecutor performs investigative functions normally performed by a detective or police officer, she is only entitled to the immunity that those officials would receive for those functions, which is qualified immunity. "When the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same." *Id. at 276*. In addition, a prosecutor is not considered to be an advocate, or carrying out prosecutorial functions, before she has probable cause to arrest a suspect. *Id. at 274*.

In Buckley, prosecutors allegedly fabricated evidence by trying to tie a boot print left on the door of the murder victim's home to Buckley during the early stages of the investigation. They rejected multiple expert witnesses who could not make the link, and continued to "shop around" until they found an expert who [*7] could. The expert they found -- who testified at trial -- was allegedly known for her willingness to fabricate unreliable testimony. *Id. at 262-263*. When Buckley was finally tried, the jury could not reach a verdict, and the charges against him were ultimately dropped after he had spent approximately three years in prison. *Id. at 264*.

Buckley then sued the police and prosecutors involved in the case under *§ 1983*. The prosecutors claimed they were entitled to absolute immunity for fabricating the boot print evidence, but the United States Supreme Court disagreed. The Court found that shopping for an expert to help fabricate evidence during the preliminary investigation of a crime fell outside the scope of prosecutorial duties because "there is no common-law tradition of immunity for it, whether performed by a police officer or prosecutor." *Id. at 270 n.5.*

Plaintiff here makes similar allegations to those in Buckley: He asserts that defendant fabricated Pouncy's statement to create probable cause by falsely implicating him in the shooting. Plaintiff has sufficiently alleged that defendant was performing an investigative function because the fabrication of the statement took place during [*8] the initial investigation of the shooting, before probable cause to charge and detain plaintiff had been established. Accepting the allegations in the complaint as true, we find that defendant is not entitled to absolute immunity for this act. *Houston v. Partee, 978 F.2d 362, 366 (7th Cir. 1992)*; *see also Patterson v. Burge, 328 F. Supp. 2d 878, 892 (N.D. Ill. 2004).*

II. Qualified Immunity

Normally we would end our analysis of immunity here, since the parties did not brief the issue of qualified immunity. However, courts should generally resolve immunity issues at the earliest possible stage in litigation -- preferably before discovery. *Pearson, 129 S.Ct. at 815.* Since the Seventh Circuit's post-remand opinion in Buckley squarely addressed the question of whether qualified immunity protects officials who prepare false evidence during an investigation, we will address qualified immunity now. *Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994).*

The United States Supreme Court has laid out a two-step inquiry to determine whether a government official is entitled to qualified immunity. *Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*; *see also Akande v. Grounds, 555 F.3d 586, 589-590 (7th Cir. 2009).* [*9] First a court must decide whether the facts alleged by the plaintiff make out a violation of a constitutional right. If the plaintiff establishes the first prong, then the court must determine whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Akande, 555 F.3d at 590.* If the plaintiff has not alleged a constitutional injury, the court need not proceed to the second step, as the official is entitled to immunity. *Id.*

In Saucier, the Supreme Court mandated that courts address the question of a constitutional right first in every qualified immunity case. *533 U.S. at 201.* Courts were only permitted to address the second prong if the plaintiff established the first one. *Id.* Recently, however, the Supreme Court held that the two-step sequence of Saucier "should no longer be regarded as mandatory." *Pearson, 129 S.Ct. at 818.* Instead courts have discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* Here we will turn first to whether plaintiff has alleged a constitutional injury because this issue is dispositive.

On remand in Buckley, [*10] the Seventh Circuit noted that "the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, [does not] violate[] the Constitution." *20 F.3d at 797, quoting Buckley, 509 U.S. at 281* (Scalia, J., concurring). [1] Buckley did not suffer harm when the prosecutors had discussions with the unreliable expert; rather, he was injured when the prosecutors decided to file charges and proffer the expert's testimony, and when the judge allowed the expert to testify. *Id. at 796.* The court also rejected Buckley's claim that the allegedly coerced confessions of the witnesses caused him a constitutional injury. Although coercing witnesses to speak is a constitutional violation, the victims are the people who are coerced. *Id. at 794, citing U.S. v. Payner, 447 U.S. 727, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980), Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).* Because the coerced witnesses suffered the harm, Buckley could not recover because "[r]ights personal to their holders may not be enforced by third parties." *Id. at 795.* The Seventh Circuit concluded that the harm Buckley suffered from the alleged fabrication occurred, if at all, at trial, when the prosecutors would [*11] be entitled to absolute immunity. Since "the only way Buckley [could] establish a violation of the Constitution [was] to plead himself out of court," he failed to state a *§ 1983* claim. *Id. at 795.*

> 1 Contrary to plaintiff's characterization, the Seventh Circuit did not hold in Manning v. Miller that when investigators fabricate evidence, they violate a person's constitutional right to due process. *355 F.3d 1028, 1033 (7th Cir. 2004).* The court's narrow holding stated only that, "based on the specific facts of this case," the federal agents' actions were not entitled to absolute immunity. *Id.* The agents were not entitled to qualified immunity because the plaintiff had alleged that the agents violated his constitutional right to a fair trial. *Id. at 1034.* Plaintiff here has made no such claim.

Here plaintiff confronts the same problems. He asserts that defendant Leuin violated his constitutional right not to be deprived of his liberty as a result of the

fabricated statement from Pouncy (cplt. P 48). But this allegation is belied by his admission that defendant was not involved in the "actual decision to charge plaintiff" (plf. response at 1). He merely states that defendant "knew" that her [*12] fabrication would lead to criminal charges being filed and plaintiff's being detained (cplt. P 47). He does not allege that the police were under any duty to detain him as a result of the statement defendant allegedly fabricated. "The police, not the state's attorney's office, decide whether to detain an individual following arrest but prior to formal charging." *Anderson v. Simon, 217 F.3d 472, 476 (7th Cir. 2000)* (internal citations omitted). In Anderson, the Seventh Circuit found that the plaintiff's allegations that the assistant state's attorney ordered police to detain a suspect and hold a lineup, by themselves, did not state a *§ 1983* violation. "If the police chose to hold [plaintiff] until the state's attorney was satisfied that charges should be filed, that was a matter left to the discretion of the police." *Id.* Here, plaintiff does not contend that defendant ordered the police to detain plaintiff, or take any other action.

Moreover, the false statement at issue was not from plaintiff himself, but from Pouncy. Therefore, if there was any coercion involved in getting Pouncy to sign the statement (and the complaint contains no facts suggesting this was the case), then Pouncy, [*13] not plaintiff, suffered a genuine constitutional wrong. *Buckley, 20 F.3d at 794-795*. Plaintiff cannot enforce Pouncy's rights as a third party. Since the fabricated statement does not, on its own, violate plaintiff's constitutional rights, *id. at 797*, and defendant had no power to detain plaintiff, *Anderson, 217 F.3d at 476*, the complaint fails to state a claim under *§ 1983*. Because plaintiff has not alleged a constitutional violation, we need not proceed to the second step of the Saucier inquiry. *Pearson, 129 S.Ct. at 816*; *Akande, 555 F.3d at 590*.

Plaintiff urges us to follow Zahrey v. Coffey, a case involving a qualified immunity defense for a prosecutor who allegedly fabricated evidence while acting in an investigatory capacity. *221 F.3d 342, 347 (2d Cir. 2000)*. In Zahrey the Second Circuit held that a prosecutor may be sued for fabricating evidence during the investigatory phase of a criminal case when the plaintiff is deprived of his liberty as a "legally cognizable result" of the alleged misconduct. *Id. at 354*. However, the Second Circuit recognized that Zahrey was "in tension, if not in conflict" with the Seventh Circuit's post-remand decision in Buckley. *Id.* Plaintiff nowhere [*14] acknowledges this tension or attempts to distinguish the two cases. Because we are bound by Seventh Circuit precedent, we decline to follow the reasoning in Zahrey.

We recognize the "dilemma" this creates for plaintiff, as did the Third Circuit in analyzing a similar case under the precepts of the Seventh Circuit's decision on remand in Buckley. *See Michaels v. New Jersey, 222 F.3d 118, 122 (3d Cir. 2000)*. In Michaels, a teacher at a nursery school was convicted of multiple counts of sexual abuse. The verdict was reversed, and the charges eventually dropped, after questions were raised about the reliability of the methods the prosecutors used in interviewing the children who had claimed that Michaels abused them. *Id. at 121*. Plaintiff then sued the prosecutors under *§ 1983*, claiming that the coercive interviewing techniques violated her constitutional right to due process. *Id.*

The Third Circuit identified the injury as presenting the children's testimony before the grand jury and at the criminal trial. *Id. at 123*. "Until the children testified against her, Michaels's constitutional right to due process was not violated by the techniques used to interview the children." *Id.* No *§ 1983* [*15] claim could lie, therefore, on the basis of the use of the interviewing techniques themselves, and the prosecutor who presented the evidence to the grand jury and at trial was entitled to absolute immunity. The court recognized the "harsh" nature of the rule, but noted that redress was available in the form on safeguards built into the judicial system, like probable cause hearings, dismissal of the charges, and state codes of professional responsibility. *Id.* The Third Circuit therefore affirmed the district court's holding that the prosecutors were entitled to qualified immunity.

The allegedly fabricated statement here does not violate a well-established constitutional norm. Like the courts in Buckley and Michaels, we recognize that this rule leaves plaintiff without recourse against this defendant. Plaintiff's case against the police officers, however, continues. We therefore hold that plaintiff's complaint against defendant Leuin is dismissed for failure to state a claim on which relief may be granted.

Conclusion

For the foregoing reasons, defendant Leuin's motion to dismiss is granted.

/s/ James B. Moran

JAMES B. MORAN

Senior Judge, U.S. District Court

April 20, 2009.